IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15cv105

| | |
|---|---|
| KATRINA ENNIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| MISSION MEDICAL ASSOCIATES, ) | |
| affiliate of MISSION HOSPITAL, ) | |
| ASHEVILLE, NC, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is Defendant's Motion to Dismiss [# 16]. Plaintiff, who is proceeding *pro se,* brought this action against Defendant Mission Medical Associates asserting claims of discrimination pursuant to Title VII of the Civil Rights Act of 1964. Defendant moves to dismiss the Complaint in its entirety. Upon a review of the record, the parties' briefs, and the relevant legal authority, the Court **RECOMMENDS** that the District Court **GRANT** the motion [# 16].

I. Background[1]

Plaintiff began her employment with Defendant on May 6, 2013, as a

---

1 For purposes of ruling on Defendant's Motion to Dismiss, the Court has drawn the facts from both the Complaint Form submitted by Plaintiff and the statement of supporting facts Plaintiff submitted in support of the Complaint and expressly incorporated into the Complaint. (Pl.'s Compl. at p. 4, ECF No. 1.)

-1-

practice manager with Mission Adult Medicine ("Mission"). (Pl.'s Compl. at pp. 5. 8, 11-12, ECF No. 1.) At the time, the office where Plaintiff worked included internal medicine, family practice, and geriatrics. (Id. at p. 5.) Shortly after beginning her employment with Mission, Plaintiff began having problems with Dr. Lorena Wade, a part time female employee of Mission. (Id. at p. 5.)

In August 2013, Mission decided to split the practice. (Id.) The internal medicine practice would move to a new building in Biltmore Park, and the geriatrics practice would remain in the current location. (Id.) Mission enlisted the assistance of an outside consultant to assistant with the split of the practices. (Id. at pp. 5, 7-8.)

On November 1, 2013, Plaintiff sent an email to two individuals in Human Resources in which she stated that Dr. Wade was making hostile and treating remarks. (Id. at pp. 5-6.) Executive Director Joy McKey then informed Plaintiff that the Medical Director was coming to the office to meet with Dr. Wade, Plaintiff, and other individuals. (Id. at p. 6.) On November 5, 2013, a meeting took place; Dr. Wade, Plaintiff, the Medical Director, and Executive Director McKey were all present at this meeting. (Id.) Although Plaintiff expressed her concerns at this meeting regarding the behavior of Dr. Wade towards her and other staff members, neither the Medical Director nor Executive Director McKey

addressed Plaintiff's specific concerns. (Id.) Rather, the meeting addressed the concerns related to the decision to split the practice into two groups. (Id.) After the split Dr. Wade and others would be going to the new Biltmore location while Plaintiff would stay with the geriatricians in the current location as their practice manager. (Id.) After this meeting, Executive Director McKey gave a verbal counseling to Plaintiff on a number of issues. (Id. at pp. 6-7.)

In December of 2013, Plaintiff met with Executive Director McKey, who offered Plaintiff a position to work with Becky Presley so that she would no longer have to work with Dr. Wade. (Id. at p. 8.) Plaintiff turned the job down, in part, because she was concerned about the staff that would continue to work with Dr. Wade. (Id.) After Plaintiff declined the position offered to her, Executive Director McKey again tried to convince Plaintiff to accept this new position, but Plaintiff again declined. (Id. at pp. 8-9.)

On March 28, 2014, Plaintiff contacted Executive Director McKey and told her that she felt that she was being retaliated against and harassed for not accepting the position working with Ms. Presley. (Id. at p. 9.) Several days later, on March 31, 2014, Plaintiff filed a Charge of Discrimination with the EEOC. (Id. at p. 10.) Plaintiff's Charge of Discrimination indicated that she believed she was being retaliated against based on her complaints regarding the conduct of Dr. Wade. (Ex.

-3-

L. to Pl.'s Compl. at p 10, ECF No. 1-4.) Mission received formal notification of the Charge of Discrimination on May 13, 2014. (Pl.'s Compl. at p. 10.)

At some point, Mission decided not to have a geriatric practice. (Id. at p. 11.) Mission informed some of the doctors in this practice that they could either practice as internal medicine doctors at the new Biltmore location or practice as geriatricians with MAHEC. (Id.) In June of 2014, Plaintiff inquired whether she would have a job at Mission after the practices were split on August 15, 2014. (Id.) Mission subsequently informed Plaintiff and other staff members that the staff members who were previously informed that they would be staying at the current location with the geriatricians would be provided other options for employment. (Id.)

On June 20, 2014, Mission provided Plaintiff with several options for continued employment after the split. (Id.) Mission informed Plaintiff that she could potentially move into the practice manager position with the geriatrics practice with MAHEC, but would no longer be a Mission employee. (Id.) In addition, Mission informed Plaintiff that she could take a job with Mission in Sylva or Nebo. (Id.) Plaintiff declined all three options. (Id. at pp. 11-12.) As a result of Plaintiff's decision to turn down each of the post-split employment options, Plaintiff's last day of employment with Mission was August 13, 2014.

(Id. at p. 12.)

The EEOC issued Plaintiff a Notice of Right to Sue on March 16, 2015, and Plaintiff then brought this action pursuant to TitleVII. (Id. at p. 3.) Plaintiff contends that she was retaliated against by Defendant for filing her Charge of Discrimination with the EEOC. (Id. at p. 3.) Specifically, Plaintiff contends that Defendant retaliated against her by terminating her employment. (Id. at p. 4.) In addition, Plaintiff indicated in the Complaint that Defendant discriminated against her on the basis of her race, sex, and religion. (Id. at p. 3.)

Defendant now moves to dismiss the Complaint in its entirety. The District Court referred the Motion to Dismiss to this Court. Accordingly, Defendant's Motion to Dismiss is now properly before this Court for a Memorandum and Recommendation to the District Court.

## II. Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering Defendant's motion, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to Plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts

as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for

a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

### III. Analysis

#### A. Plaintiff's Claims for Race, Sex, and Religious Discrimination

Before a plaintiff files suit under Title VII, he or she must first file a charge of discrimination with the EEOC. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). "The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation." Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). The EEOC charge defines the scope of a plaintiff's right to bring a subsequent civil action in federal court. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). If a plaintiff fails to file a charge of discrimination and exhaust her administrative remedies, a federal court lacks subject matter jurisdiction over the claim of discrimination. Jones, 551 F.3d at 300.

A plaintiff, therefore, is generally limited to the allegations contained in the administrative charge of discrimination in a subsequent federal lawsuit. Evans v.

Techs. Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996); Chacko, 429 F.3d at 509 ("Our cases make clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge."); Jones, 551 F.3d at 300 ("The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents."). For example, a plaintiff who only alleges race discrimination in his charge of discrimination with the EEOC may not maintain an action in federal court based on an allegation of age discrimination. See Chacko, 429 F.3d at 509. "Only those discrimination claims stated in the initial charge, those reasonable related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Evans, 80 F.3d at 963; see also Chacko, 429 F.3d at 509. Courts, however, must liberally construe an administrative charge of discrimination because it is typically not prepared by an attorney. Chacko, 429 F.3d at 509; Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). "[S]o long as "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," she "may advance such claims in her subsequent civil suit.'" Sydnor v. Fairfax Cty., Va., 681 F.3d 591, 594 (4th Cir. 2012) (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000).

In filling out the Charge of Discrimination, Plaintiff marked only the retaliation box.  (Ex. L. to Pl.'s Compl. at p 10.)  Plaintiff did not mark the box for race, sex, or religion.  (Id.)  Similarly, the Notice of Charge of Discrimination listed only retaliation as the alleged discrimination.  (Id. at p. 12.)  Although Plaintiff referred to witnessing discriminatory comments and treatment by Dr. Wade regarding religions, sex, and national origin towards other employees, she fails to set forth any facts supporting a sex or religious discrimination claim as to her.  (Id. at. p. 10.)  Moreover, there is no mention of race at all.  (Id. at pp. 10-13.)  Rather than set forth a charge of discrimination based on race, sex, or religion, the Charge of Discrimination sets forth only a charge of retaliation based on Plaintiff's action in reporting the alleged discriminatory comments and treatment by Dr. Wade to other employees.  (Id.)   The investigation by the EEOC also focused on the retaliation claim, not any sex, race, or religious discrimination directed towards Plaintiff.  Like the plaintiff in Jones, who only marked the retaliation box and did not check the boxes for age, sex, or race, Plaintiff failed to exhaust her administrative remedies as to her claims of race, sex, or religious discrimination.  Jones, 551 F.3d at 301; see also Russell v. BSN Med., Inc., 721 F. Supp. 2d 465, 476 (W.D.N.C. 2010) (Conrad, J.).  The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 16] and dismiss the claims for race, sex,

and religious discrimination **without prejudice**.

### B. Plaintiff's Claim of Retaliation

Plaintiff also asserts a claim for retaliation. Title VII makes it unlawful for an employer to discriminate against any employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3(a). In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of retaliation under Title VII by demonstrating that: (1) she engaged in protected activity; (2) her employer took some adverse employment action against her; and (3) there is a casual link between the adverse employment action and the protected activity. Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 249-50 (4th Cir. 2015); Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998).

As the United States Supreme Court has made clear, however, "[t]he prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 997 (2002). A plaintiff asserting a Title VII claim need not satisfy the requirements for establishing a prima facie case under McDonnell Douglas to

survive a defendant's Rule 12(b)(6) motion to dismiss. Id. at 511; McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) ("In light of Swierkiewicz, [plaintiff] appropriately argues that the district court erred in its analysis by requiring her to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss"); Fischer v. Winston-Salem Police Dept., 28 F. Supp. 3d 526, 530 (M.D.N.C. 2014) ("[T]he Supreme Court in Swierkiewicz held that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in McDonnell Douglas.").[2] The Supreme Court's subsequent decision in Twombly did not alter this rule. Craddock v. Lincoln Nat. Life Ins. Co., 533 F. App'x 333, 336 n.3 (4th Cir. 2013) (unpublished). Of course, a Plaintiff must still allege facts demonstrating that a claim of retaliation is plausible on its face and cannot rely on mere legal conclusions. McCleary-Evans, 780 F.3d at 584-85; Coleman v. Md. Ct. App., 626 F.3 187, 190-91 (4th Cir. 2010).

Here, Plaintiff need only allege facts sufficient to satisfy the elements of a cause of action under Section §2000e-3(a), i.e. that Defendant discriminated against Plaintiff because she filed a charge of discrimination with the EEOC. See

---

2  Despite the clear instruction from the Fourth Circuit that a plaintiff need not plead facts to support a prima facie case of retaliation, many courts continue to analyze motions to dismiss under this prima facie framework and treat the prima facie case under McDonnell Douglas as the elements necessary to state a claim of retaliation under Title VII. See e.g. Johnson v. Lemmonds, No. 1:15cv410, 2016 WL 447494 (M.D.N.C. Feb. 4, 2016) (discussing the current state of pleading requirements for Title VII claims).

generally McCleary-Evans, 780 F.3d at 584-85 (addressing a failure to hire case). Moreover, a plaintiff alleging retaliation must allege facts demonstrating that the alleged unlawful retaliation would not have occurred absent the alleged discriminatory actions by the employer; the plaintiff may not rely on a mixed motive theory of liability in the retaliation context. See Univ. of Tex. Southwestern Med. Ctr. v. Nassar, __ U.S. __, 133 S. Ct. 2517, 2534 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."); Foster, 787 F.3d at 249.

Plaintiff alleges that Defendant retaliated against her by terminating her employment because she filed a Charge of Discrimination with the EEOC. (Pl.'s Compl. at p. 4.) Like the Plaintiff in McCleary-Evans, however, the Court finds that Plaintiff has failed to plead facts sufficient to state a plausible claim of discrimination under Title VII. See McCleary-Evans, 780 F.3d at 585-86. Specifically, the Complaint fails to set forth sufficient factual allegations that could give rise to a reasonable inference that Defendant terminated Plaintiff because she filed a charge of discrimination with the EEOC. In fact, the factual allegations in the Complaint suggest that Plaintiff's termination was unrelated to the filing of the

claim of discrimination, and that Mission would have terminated Plaintiff irrespective of whether she filed the Charge of Discrimination with the EEOC.

As Plaintiff alleges in the Complaint, the decision by Mission to split the practice group was made prior to Plaintiff filing her Charge of Discrimination. (Pl.'s Compl. at p. 5.) And Plaintiff's position, as well as those of the physicians in the geriatrics practice at Mission, was eliminated as a result of Mission deciding not to continue with a geriatric practice. (Id. at p 11.) The geriatric practice that Plaintiff was originally going to manage became a MAHEC practice. (Id. at p. 6, 11.) As the factual allegations in the Complaint make clear, the Defendant terminated Plaintiff's employment as the result of the split of the internal medicine and geriatric practice, not because she filed a Charge of Discrimination with the EEOC. Moreover, Mission offered Plaintiff three options to continue her employment after MAHEC took over Mission's geriatric practice: Plaintiff could potentially move into the practice manager positions with the geriatrics practice with MAHEC; Plaintiff could take a job with Mission in Sylva; or Plaintiff could take a job with Mission at Nebo. (Id. at pp. 11-12.) Plaintiff declined all three offers. (Id.)

The allegations in the Complaint that Defendant terminated Plaintiff because she filed the Charge of Discrimination is simply to conclusory and speculative to

claim of discrimination, and that Mission would have terminated Plaintiff irrespective of whether she filed the Charge of Discrimination with the EEOC.

As Plaintiff alleges in the Complaint, the decision by Mission to split the practice group was made prior to Plaintiff filing her Charge of Discrimination. (Pl.'s Compl. at p. 5.) And Plaintiff's position, as well as those of the physicians in the geriatrics practice at Mission, was eliminated as a result of Mission deciding not to continue with a geriatric practice. (Id. at p 11.) The geriatric practice that Plaintiff was originally going to manage became a MAHEC practice. (Id. at p. 6, 11.) As the factual allegations in the Complaint make clear, the Defendant terminated Plaintiff's employment as the result of the split of the internal medicine and geriatric practice, not because she filed a Charge of Discrimination with the EEOC. Moreover, Mission offered Plaintiff three options to continue her employment after MAHEC took over Mission's geriatric practice: Plaintiff could potentially move into the practice manager positions with the geriatrics practice with MAHEC; Plaintiff could take a job with Mission in Sylva; or Plaintiff could take a job with Mission at Nebo. (Id. at pp. 11-12.) Plaintiff declined all three offers. (Id.)

The allegations in the Complaint that Defendant terminated Plaintiff because she filed the Charge of Discrimination is simply to conclusory and speculative to

claim of discrimination, and that Mission would have terminated Plaintiff irrespective of whether she filed the Charge of Discrimination with the EEOC.

As Plaintiff alleges in the Complaint, the decision by Mission to split the practice group was made prior to Plaintiff filing her Charge of Discrimination. (Pl.'s Compl. at p. 5.) And Plaintiff's position, as well as those of the physicians in the geriatrics practice at Mission, was eliminated as a result of Mission deciding not to continue with a geriatric practice. (Id. at p 11.) The geriatric practice that Plaintiff was originally going to manage became a MAHEC practice. (Id. at p. 6, 11.) As the factual allegations in the Complaint make clear, the Defendant terminated Plaintiff's employment as the result of the split of the internal medicine and geriatric practice, not because she filed a Charge of Discrimination with the EEOC. Moreover, Mission offered Plaintiff three options to continue her employment after MAHEC took over Mission's geriatric practice: Plaintiff could potentially move into the practice manager positions with the geriatrics practice with MAHEC; Plaintiff could take a job with Mission in Sylva; or Plaintiff could take a job with Mission at Nebo. (Id. at pp. 11-12.) Plaintiff declined all three offers. (Id.)

The allegations in the Complaint that Defendant terminated Plaintiff because she filed the Charge of Discrimination is simply to conclusory and speculative to

support a plausible claim of retaliation under Title VII. See <u>McCleary-Evans,</u> 780 F.3d at 585-86; <u>see</u> <u>also</u> <u>Nixon v. N.C. Dep't of Trans.</u>, No. 3:14cv703, 2016 WL 538486, at *2 (W.D.N.C. Feb. 9, 2016) (Mullen, J.). Put another way, the Complaint fails to sufficiently set forth factual allegations giving rise to a plausible claim that but for Plaintiff bringing a Charge of Discrimination, she would still be employed at Mission. See <u>Nassar</u>, __ U.S. __, 133 S. Ct. at 2534. Accordingly, the Court **RECOMMMENDS** that the District Court **GRANT** the Motion to Dismiss as to the Title VII retaliation claim and dismiss this claim **with prejudice**.

## IV. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the motion [# 16]. The Court **RECOMMENDS** that the District Court **DISMISS** the Title VII retaliation claim **with prejudice** and the remaining claims of discrimination under Title VII **without prejudice**.

Signed: March 28, 2016

*[signature]*

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).